696 So.2d 1275 (1997)
CITY OF MIAMI, a municipal corporation of the State of Florida, Appellant,
v.
TARAFA CONSTRUCTION, INC., a Florida corporation, Appellee.
Nos. 96-98, 96-2149, 96-2888.
District Court of Appeal of Florida, Third District.
July 9, 1997.
*1276 A. Quinn Jones, III, City Attorney, and Theresa L. Girten and Christopher F. Kurtz, Assistant City Attorneys; Robert S. Glazier, Miami, for appellant.
Michael C. Spring and David L. Swimmer, Miami, for appellee.
Before LEVY, GREEN and SHEVIN, JJ.
LEVY, Judge.
The City of Miami appeals from an adverse Final Judgment entered by the trial court in an action against it for damages caused by the delay of a construction project. In addition, the contractor who sued the City of Miami cross-appeals from that portion of the Final Judgment which awarded damages to the City pursuant to its counterclaim. For the reasons set forth below, we reverse.
On October 14, 1986, Tarafa Construction (the "Contractor") and the City of Miami (the "City") entered into a contract whereby the Contractor would modify and expand an existing fire station. The contract provided that the Contractor would be charged $750.00 per day for every day the project was delayed past a certain completion date. The Contractor posted a bond for the project as required by the Florida Statutes. The project was to take 600 days, commencing in December, 1986, and ending in August, 1988. Due to delay, the project was not completed until late 1989.
According to the Contractor, the City was responsible for 409 days of the delay. The Contractor sued the City and sought various types of damages related to the costs it incurred at the construction project after the scheduled completion date. The types of damages sought by the Contractor included, inter alia, extended warranty damages, loss of business opportunity, loss of efficiency, claim preparation costs, value engineering, and the escalating cost of bid alternates. The City filed a counterclaim. The City alleged in its counterclaim that the Contractor was responsible for 209 days of the delay.
*1277 The trial was plagued by scheduling problems. It consisted of nine days of testimony taken sporadically over an eleven-month period. The first testimony was taken in February of 1994. Each party presented testimony to establish that the delay, or at least certain portions of it, was the fault of the other party. The two parties and their experts offered competing opinions as to who caused the delay and who should be responsible for its costs. The last testimony was taken in January of 1995. The trial court did not enter the Final Judgment until August, 1995, nearly seven months after the close of all evidence. The Final Judgment awarded each party virtually exactly the damages each party requested.[1]
The trial court awarded damages to the Contractor for the cost of extending its warranty to repair the project, loss of business opportunity, loss of efficiency, the cost of claim preparation, the cost of value engineering, and the escalating cost of bid alternates. The City timely appealed those damages awarded the Contractor. The Contractor cross-appealed the damages awarded the City on its counterclaim. For the following reasons, we reverse the entire Final Judgment.
We hold that this case must be reversed and remanded in its entirety. However, two damage elements sought by the Contractor in this case may not be pursued upon remand. First, the "value engineering damages" sought by the Contractor cannot be re-tried when this case is remanded to the trial court for a new trial because it is barred by the principle of sovereign immunity. We recognize that the state or any of its subdivisions can be sued under the express or implied terms of an existing written contract. See Dade County v. American Re-Insurance Co., 467 So.2d 414 (Fla. 3d DCA 1985). However, the engineering costs in the instant case were incurred before the Contractor was awarded the contract and were incident to the Contractor's bidding process. No written contract for the value engineering work existed. Accordingly, under the principle of sovereign immunity, damages for the value engineering work are not recoverable because no written contract existed between the parties at the time this pre-contract work was performed. See Pan-Am Tobacco Corp. v. Department of Corrections, 471 So.2d 4 (Fla.1984); Southern Roadbuilders, Inc. v. Lee County, 495 So.2d 189 (Fla. 2d DCA 1986).
Second, the "claim preparation damages" sought by the Contractor cannot proceed to trial when this case is remanded because parties involved in a contractual dispute are not entitled to pre-litigation costs. The Contractor concedes that no Florida law supports the claim preparation damage award. In addition, we are unpersuaded that the federal construction cases endorse a damage award for claim preparation costs. In fact, the then United States Claims Court has stated:
In Singer Co. v. United States, 215 Ct. Cl. 281, 568 F.2d 695 (1977), cited by defendant, Singer attempted to recover claim preparation costs by arguing that these costs were incidental to performance of the contract. The court denied recovery, holding that the "requests for equitable adjustment were not performance-related; they bore no beneficial nexus either to contract production or to contract administration. Accordingly, the [claim preparation costs] are not recoverable." 215 Ct.Cl. at 328, 568 F.2d at 721. The boards of contract appeals regularly reach the same result. E.g., Coastal Dry Dock and Repair Corp., ASBCA No. 36754, 91-1 BCA (CCH) ¶ 23, 324, 1990 WL 177496 (costs incurred pursuant to claim preparation unallowable); Yadkin, Inc., PSBCA No. 2051, 89-2 BCA (CCH) ¶ 21,709, 1989 WL 27910 (expenses incurred in documenting a claim unrecoverable). Plaintiff's claim for proposal preparation and contract administration must fail.
Wilner v. United States, 23 Cl.Ct. 241, 261 (1991)(alteration in original). See also Gulf Contracting, Inc. v. United States, 23 Cl.Ct. 525, 532 (1991) ("These expenses [claim preparation *1278 costs] were incurred entirely after completion of construction; they bear no relation to production or administration of an ongoing contract and must be disallowed.") (citation omitted), aff'd, 972 F.2d 1353 (Fed. Cir.1992). Consequently, upon remand to the trial court, the two foregoing claims of the Contractor should be dismissed by the trial court.
As to all of the other portions of the Final Judgment rendered by the trial court, including all findings of fact, conclusions of law, and other matters decided in the said Final Judgment, including the findings by the trial court as to the number of delays attributable to each of the parties herein, we reverse and remand to the trial court for a re-trial on all of the issues and causes of action filed by both of the parties herein, (other than the two damage claims, described above, which we have directed the trial court to dismiss for the reasons stated above).[2] We reverse based on the authority of, and the reasoning contained within, the opinion of the Fourth District Court of Appeal in the case of Tunnage v. Bostic, 641 So.2d 499 (Fla. 4th DCA 1994), and the cases consistent with Tunnage.[3] We find the Tunnage case to be particularly applicable because of the similarity between the Tunnage case and the instant case regarding the length of time it took for the trial to proceed, combined with the long delay after the trial before the Final Judgment was rendered, as well as the somewhat confusing, and in some cases contradictory, nature of various provisions of the Final Judgment which awarded each party almost exactly the amount each requested.
Reversed and remanded.
NOTES
[1] The Final Judgment awarded the Contractor $705,226.00, the same amount of damages it requested in its complaint. The City was awarded $170,410.00, and it sought $173,410.00 in its counterclaim.
[2] The City concedes that the Contractor is entitled to certain types of damages and we do not disturb those damage elements that the City does not challenge. However, the amounts awarded even on these uncontested elements are reversed to the extent that they are affected by any changes in the apportionment of liability upon remand. This reversal also applies to the attorney fee awards, which the parties concede, should be reconsidered by the trial court in the event the damage awards are significantly changed.
[3] See Caswell v. Caswell, 674 So.2d 861 (Fla. 2d DCA 1996); McKenzie v. McKenzie, 672 So.2d 48 (Fla. 1st DCA 1996); Polizzi v. Polizzi, 600 So.2d 490 (Fla. 5th DCA 1992).